Turley, J.
delivered the opinion of the court.
From the facts in this case, it appears that the complainants Wm. A. Gasget& Co., and the defendants, Scott and Tract, who are the persons indebted, are non-residents; that no judgment has been obtained at law; that the demand is of a legal and not of an equitable character, and that no personal service of process has been had in this case. The question then arises, had the Court of Chancery power to entertain jurisdiction of this cause and to give the decree complained of? Clearly there is no principle of equity jurisprudence which ¿ives this jurisdiction, and if it can be sustained, it must be by legislative enactment, which it is said is to be found in the act of 1832, c 11.
Before proceeding to construe this statute, let us examine what will be the result of the construction contended for by Ae complainants. There is no principle of the common law more sacred, than that no man shall be deprived ofhis property by the judgment of a court, without personal notice that he has 'been impleaded therein. This great principle, which has always been considered so important to the safety of the citizen, has been violated in but few instances, and in those only, where Ae evils resulting from requiring the notice, would more than counterbalance those arising from proceeding without it-; or when some peculiar privilege is intended to be given to the citizen of the State, as in the eases of attachments against absconding or non-resident debtors; motions against the public officers of the State, and of securities against their principals. Attachments against absconding debtors are given, because it is the policy of the law and the honest right of the creditor, that his contract shall be tried where it was made. Attachments against non-residents are given as matter of favor to our own citzens, without regard to the right, in order that they may not be compelled to go abroad for the collection of their debts if the means of satisfaction can be had at home; and all judgments on motion without notice are given merely from what is considered to be the sound policy of the country.
Such violations of the common law are watched with great *247 jealousy; they can only be made by express enactment, and áre always construed by the letter of the law. But if the construction of the act of 1832, c. 11, § 4, contended for, be given by the court, then by one sweeping enactment this foundation of the jurisdiction of our courts of justice is destroyed in every case of contracts made between the citizens of other governments, whenever one of them may own property or stock of any description, or even debts within the limits of this State; provided the creditor may think proper to resort here for satisfaction of his debt. A construction under which1 the grossest fraud and injustice may be practiced. Indeed, it would be saying to every creditor from another State, where the statute of limitation may b’e shorter than ours, pur-gué’your redress against the property of the debtor in the State' of Tennessee, arid your action fe revived. To every individual who has a fraudulent or doubtful claim against another, file your bill in a court of Chancery in the' State of Tennessee, and it shall be adjudicated upon your own ex parte testimony, and your adversary’s property sacrificed without his knowledge. Who does not see that claims innumerable, will be fictitiously raised against the non-resident owners of property within the’ limits of our State, and established by perjury, if this be1 the construction of the statute, as by its provisions no delay of proceedings is required, nor no act to be done byj which the party interested may be presumed to have acquired notice.
In the' cities of New York, Philadelphia and New Orleans, there is perhaps scarcely a merchant who is not the owner of either property, stocks or debts to a large amount in the State of Tennessee; under this construction of the statute, every man to whom they may be indebted, may harrass them with suitó’in our courts, compel them to submit to injustice, or litigate their rights at an immense consumption of time and money;'and all this for whose good? Not for the citizens of the State of Tennessee, for their rights are protected without this construction; but, as is argued, solely for the benefit of citizens of other governments, who .stand in no need of our protection, and so far as this statute is concerned, might well exclaim, “let us and our goods alone.” A construction from which *248 SUC^ consequenccs will flow, will never be given to a statute’ un^ess Ae court is compelled by its plain and manifest wording: and meaning; so to do. All statutes making such ° . _ ° • i*i violent alterations of the common law, are to be strictly construed, and are by no equity of construction to be made to embrace cases not within their wording and intent; but at the same time, it is not denied that such statutes may be enacted, and that when they are, it is the duty of the court to enforce them.
This brings us to the construction of the statute. On the 14th day of December 1831, a statute was enacted, abolishing imprisonment for debt, and on the 18th day of October 1832, the statute under consideration, entitled “An act to amend an act entitled an act to abolish imprisonment for debt, except in cases of fraud,” was passed. It contains four sections. The first provides, “that whenever an execution against the property of a defendant, shall have been issued ori a judgment at law or a decree in equity, and shall have been returned unsatisfied in whole or in part, the party suing out such execution, may file a bill in Chancery against such defendants, and any other person or body corporate, to compel the discovery of any bank stock or other kind of stock, or of any property or thing in action due to him or held in trust for him, and to prevent the transfer of any such stock, property, money or other thing in action, or the payment or delivery thereof to the defendant, except when such trust has been created by, or the fund so held in trust has proceeded from some person, other than the defendant himself, and is declared by will duly recorded, or by deed duly proved and registered.”
The second section provides, “that the court of Chancery shall have power to compel such discovery and to prevent such transfer, payment or delivery, and to decree satisfaction of the residue on such judgment or decree, out of any property, stock, money or things in action, belonging to the defendant, or held in trust for him, with the exception above stated, which shall be discovered by the proceedings in Chancery, whether the same were originally liable to bejakea in execution at law or not; and the court shall have power to order such bond or other securities to be given by either plaintiff or *249 defendant as may be necessary to carry that jurisdiction into cota-plete effect, or to order transfers of stock or other property, or1 ehoses in action to be made according to the rules of law and equity.
The evil to be remedied by these sections is manifest. The legislature were apprehensive, that, inasmuch as they had abolished the right td issue an execution against the body of the debtor as a matter of course, upon application, an inducement might thereby be held out to dishonest debtors to vest their property in stocks or debts, which were not liable to execution at law, and out of which satisfaction could not be decreed by a Court of Chancery, as the law stood. To prevent this, the power is expressly given to the Courts of Chancery to decree satisfaction out of stocks and ehoses in action, in the same manner as they had previously done out of an equitable interest in real or personal property; but still the same diligence at law is required before this ban be asked, which is understood to be a judgment and an execution thereon returned unsatisfied in whole or in part.
The 3d section makes provision for the registration of a memorandum of the judgment, in the county where the real estate sought tobe subjected is situated, and in all other cases, in the county where the debtor resides, within sixty days from the time of the rendition of the judgment, without which it shall not bind equitable interests in real estate or other property, or legal or equitable interests in stocks or ehoses in action, and that the lien shall cease unless a bill be filed within ten days from the time of the return of the' execution unsatisfied.
The fourth and last section provides, “That in all cases when personal service of process cannot be made at law, and when no original attachment at law will lie, and no judgment at law canbe obtained, and also in cases where the demand is purely of an equitable nature, a Court of Chancery shall have jurisdiction to subject legal and equitable interests in every species of stock and other property, with the exception herein before stated, and also in real estate, provided that in case of a legal demand, the amount due shall be ascertained by the verdict of a jury, summoned in the same manner as for other trials’ of issues of fact before a Court of Chancery.
*250 It is manifest that the drawer of this statute was familiar’ • with the principles of equity practice, which prohibited the filing of a bill to subject an equitable interest in property, unless judgment had been obtained at law, and execution returned thereon, “mella boner,'1'1 and that he had no intention- to- establish a different rule of practice by the- statute, except in cases of absolute necessity.
The first and second5 sections require- a judgment and an execution, and' the fourth only dispenses with them, where a judgment at law cannot be obtained, because personal service of process cannot be made, or where an attachment at law will not lie. In all other cases judgment must"1 be obtained, and an execution upon it returned unsatisfied in whole or in part, before a bill in Chancery can be filed. It is said by the counsel for complainant, that the case under consideration, falls within the very words of this statute, because here they say, no personal service of process can be made, inasmuch as the defendants are non-residents, and' that no attachment at law will lie, because the complainants are non-residents, and we have no statutes permitting non-residents to sue in our courts by attachment. This is true, but it is so manifestly out of the spirit of the statute and the evil intended to be remedied by it, that unless we can find no other class of cases to which it may be made to apply, without doing such injustice to what we think to be its true spirit and meaning, we cannot consider this case within it.
Our courts of justice have always been open for suits by foreigners against our own citizens and others within our boundaries, upon whom personal service of process can be made. This is surely as much as they have a right to demand. We have found it necessary for the protection of our citizens in some few instances, to open them against those upon whom personal service of process cannot be made, but it is believed in but two cases, those of non-resident and absconding debtors; and this has fipen done upon the principle that, inasmuch as some person is to be injured by having to litigate his suit at a distance from his home, and inasmuch as in the case of the absconding debtor, the contract was made in the State, and in the case of the non-resident debtor, the property is in the *251 State, no injustice is done by giving our courts jurisdiction. But the principle does not by any means apply to cases where both the debtor and creditor are non-residents; and a law which would give a non-resident creditor the right to implead anon-resident debtor in our courts, without personal service of process, for any other cause than to obtain satisfaction of a judgment out of his property which might be in the State, would be unwise, impolitic and unjust. What evil is it to a non-resident creditor, that he cannot serve his process upon a non-resident within this State. When he made his contract, did it enter into the stipulations thereof, either expressly or impliedly, that he should have the power so todo? Surely not. Then, is it an evil which our legislature could reasonably have been asked or expected to guard against. An attempt on their part to do so, would be an act of supererogation. It would be protecting the rights of those over whom they had no jurisdiction, against the wrongs of those over whom they likewise had no jurisdiction.
In this case it is said, personal service of process cannot be made. Why? Because the complainants have thought proper to sue it out in a State where the defendants never resided. Personal service may be made, if the process be sued out in the State where the defendants reside. But then it is said the statute gives the right to sue without the service of process. If this right exist it is ustricti juris,” and is not to be inferred from any just construction of this statute; and as has been said, unless no other construction can be given to it, we must determine that the case does not fall within its provisions.
As we have seen, the intention of the legislature was (inasmuch as they had freed the body of the debtor from execution) to make all of his property of every kind and description liable for his debts; and that in order so to do, they vested the Courts of Chancery with an extent of jurisdiction never before exercised by them, by which stocks and debts, were put upon the same footing with equitable estates, and made liable by decree to execution.
The intention, then, was to subject this description of property to execution, and in the first and second sections provision is made for creditors who can obtain judgments at law, but *252 ^ was seen’ f^at a C^ass °f cases might exist where judgment - at law could not be obtained, and that by this means the whole intention of the legislature might be prostrated. It will be recollected that stocks and equities are not by law liable to attachment; the consequence was, that a debtor in this State might thus invest all his property, and flee the country before process could be served upon him; then the case would really exist against which the legislature might well provide. Here personal service of process cannot be made at law, and no original attachment at law will lie, (and of course) no judgment at law can be obtained. Here then is a class of cases, which fall legitimately within the evil intended to bejem-edied by the statute, and for which the legislature might with consistency provide; and we are under no necessity of construing it to apply to cases of non-resident creditors and debtors, in order to find a subject matter for its operation. The construction contended for would, in such cases as the one now under consideration, give a non-resident creditor, greater privileges under the statute than are given by it to resident creditors; for it is manifest, that the complainants, had they been citizens of the State, would have been entitled to an original attachment, and therefore could not have claimed the aid of a court of Chancery without a judgment and execution; and indeed, would not have needed it, for the property sought to be subjected by a decree is liable to execution at law. We are therefore of opinion, that the statute does not, and was not intended to give jurisdiction of this and similar cases to a court of Chancery. Will any injustice or hardship result from this determination? None that we can perceive. It is admitted that a foreign debtor ought not to be permitted to accumulate property in this State and hold it discharged from the claims of his foreign creditors. And by the provisions of the act of 1801, c 6, § 2, ample provision is made for preventing it. By the provisions of that act, any non-resident creditor may, upon the production of a judgment and execution from the courts of the State^where his¡| debtor may reside, obtain the aid of the courts of Chancery m this State, to subject his property here to the satisfaction thereof. This is all that ought to be asked. It leavest he debtor and creditor to litigate their disputes *253 in the courts where they reside. After this is done we give the aid of our courts of Chancery, to enforce collection from any property within this State. In this particular case it is not seen that any injustice is done by the decision of this court. The answers aver that the property was given by a father to his children by way of advancement in good faith, and that he is amply solvent and able to pay the debt claimed from him, There is no proof whatever to the contrary; and if the fact were, and it so appeared, that the debt was contracted before the gift was made, the bill would have to be dismissed for this cause; but if the answers be true, the complainants, by suing in the State where the debtors reside, may collect their money without breaking up and and destroying family settlements, an object much to be desired, and which will always be enforced when the law permits.
The decree will be reversed and the bill dismissed at the .cost of the complainants.
Decree reversed.